T.C. Summary Opinion 2007-107

UNITED STATES TAX COURT

ANTIM G. AND JANE V. STRAUS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22555-05S.          Filed June 25, 2007.

Antim G. and Jane V. Straus, pro sese.

<u>Charles E. Graves</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the year 2003 in the amount of $5,879, and an accuracy-related penalty of $1,176 under section 6662. The issues for decision are whether the distributions of the cash value of a whole life insurance policy and interest in 2003 are taxable to petitioners, and whether petitioners are liable for the accuracy-related penalty under section 6662 arising from a substantial understatement of tax for that year.

## Background

The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioners resided in Springfield, Missouri.

When Katherine Straus, petitioners' daughter, was 3 years old, petitioners purchased a whole life insurance policy (policy) from Northwestern Mutual Life Insurance Company (Northwestern Mutual) which insured Katherine. Petitioners were listed as the sole owners on the policy. Annual premiums on the policy were approximately $1,000. Petitioners purchased the policy for the purpose of covering educational costs for Katherine if and when she decided to pursue a college degree. Katherine graduated from high school in 2000, and thereafter enrolled at Southwest

Missouri State University.  At the time of Katherine's graduation, the cash surrender value of the policy was $27,097.

Petitioners received two loans on the policy in 2001.  The first loan, for $5,000, was received on April 5, 2001.  The second loan, also for $5,000, was received on December 11, 2001.  Both loans carried an interest rate of approximately 8 percent.

Sometime in 2003, and precipitated by a downturn in petitioners' business income caused by post-9/11 factors, petitioners decided to cash out the policy so as to pay Katherine's current school expenses and set aside funds for the remainder of her college education.

Northwestern Mutual reported to respondent a gross distribution to petitioners in 2003 in the amount of $23,153, with the taxable portion of that amount being $19,204.  In addition to this distribution, Merrill Lynch and Commerce Bank reported interest distributions in 2003 to petitioners in the amounts of $25 and $17, respectively.  Petitioners reported neither the Merrill Lynch nor the Commerce Bank distribution on their 2003 return.  After the Commissioner adjusted petitioners' income to reflect receipt of these distributions, petitioners' income was increased to a point where they no longer qualified to take a Tuition and Fees Deduction in the amount of $3,000.  The combination of these circumstances resulted in the deficiency at issue.

## Discussion

The Commissioner's determinations are presumed correct, and taxpayers generally bear the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners did not argue that section 7491 is applicable in this case, nor did they establish that the burden of proof should shift to the respondent. Moreover, the issue involved in this case, inclusion of items in gross income, is a legal one to be decided on the record without regard to the burden of proof. Petitioners, therefore, bear the burden of proving that respondent's determination in the notice of deficiency is erroneous. See Rule 142(a); Welch v. Helvering, supra at 115.

Section 61(a) provides that gross income means all income from whatever source derived, including "Interest" and "Income from life insurance." Sec. 61(a)(4), (10). The sole exception to the inclusion of income from life insurance lies in section 101, which specifically excludes from gross income amounts received "under a life insurance contract, if such amounts are paid by reason of the death of the insured." Sec. 101(a)(1). Section 72(a) provides that gross income includes any amount received as an annuity under a life insurance contract. Given these statutory predicates, there is no authority upon which we may declare the distributions at issue in this case exempt from inclusion in gross income and accordingly, exempt from taxation.

We also note that petitioners conceded at trial that the distributions at issue were, in fact, received by them and should be included in their gross income for 2003. After this concession, and with respect to only the life insurance distribution, petitioners proffered three creative, yet misguided, arguments as to why the Court should enter a decision in their favor. For the foregoing reasons, we decline to follow petitioners' reasoning.

First, petitioners argue that the Northwestern Mutual distribution should be excluded from their gross income as it is not actually a life insurance policy but rather a custodial account. Custodial accounts are investment accounts, opened under the Uniform Transfer to Minors Act, where the minor is the listed owner of the account and its assets, and a custodian manages the account until the minor reaches the age of distribution for their State of residence. Earnings, up to a certain amount, are taxed at the minor's income tax bracket.

In this case, the policy fails to satisfy the elements of a custodial account. The policy at issue was owned solely by petitioners, and they did not substantiate that Katherine had any ownership interest in or control over the policy. Petitioners mistakenly argue that because the policy was "in Katie's name," and they were its owners, it should follow that the policy be regarded as a custodial account. The policy, however, was

purchased on Katherine's life and not, as petitioners contend, "in her name." Accordingly, and even though it was petitioners' intent to use the policy for Katherine's education, it does not follow that the policy was akin to a custodial account. Whole life insurance and custodial accounts are distinct and separate investment devices, and one cannot be the other.

Second, petitioners argue that the Northwestern Mutual distribution should be treated as a long-term capital gain and were this treatment to apply, petitioners' carryover loss in 2003 ($27,703) would more than offset the taxable portion of the distribution ($19,204). As to this argument, petitioners rely on the reasoning that life insurance falls within the definition of a capital asset.

When a life insurance policy, such as the one at issue, is not a straight-term policy, it will generally have a cash surrender value. If the policy owner surrenders the policy, the holder will then pay the cash surrender value in accordance with policy terms, after withholding for any outstanding loans against the policy at the time of surrender. Under section 1.72-11(d)(1), Income Tax Regs., if the amount received by the holder is greater than the holder's basis in the policy, the owner will recognize income in the amount of the difference. This income will then be treated as ordinary income, irrespective of the rather inclusive notion of what qualifies as a capital asset,

since the surrender of the policy is not deemed as a "sale or exchange" as required for capital assets under section 1211. Accordingly, we cannot accept petitioners' reasoning that, as a capital asset, the proceeds from the Northwestern Mutual distribution should be excluded from their gross income.

Third, and finally, petitioners argue that had they known that the Northwestern Mutual distribution would be included in their 2003 gross income they would have certainly taken planning steps to eliminate this result; namely, by making tax-free gifts to Katherine. Petitioners argue that the Court should treat the distributions now as if they did, in fact, do this and accordingly, exclude the entire distribution from their gross income, treat the entire distribution as transferred to their daughter, and then allow either petitioners or their daughter to pay tax on the distribution at Katherine's applicable income tax rate (approximately 10 percent). Simply put, there is no authority under which we may provide such relief. Taxpayers are bound to the form in which they cast their transaction. Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974). Accordingly, we sustain respondent's determination as to the amount in deficiency.

As to the second issue, whether petitioners are liable for the accuracy-related penalty arising from a substantial understatement of tax under section 6662, we start our discussion

under section 6662(a), which provides that taxpayers may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations or to a substantial underpayment of tax. Sec. 6662(a) and (b)(1) and (2). No penalty, however, is imposed under section 6662 if there is reasonable cause for the underpayment of tax and the taxpayer has acted in good faith. Sec. 6664(c)(1).

Pursuant to section 7491(c), respondent bears the burden of production with respect to the issue presented under section 6662. In order to meet respondent's burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the accuracy-related penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The burden of proof remains with petitioner with respect to the accuracy-related penalty that respondent determined in the notice. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, supra at 446-447.

It is respondent's position that petitioners' underpayment for 2003 was attributable to: (1) Negligence or disregard of the Code, and (2) a substantial understatement of tax. For purposes of section 6662(b)(2), a substantial understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in such return, sec.

6662(d)(2)(A), and is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the return for that taxable year or $5,000, sec. 6662(d)(1)(A). The amount of the understatement is to be reduced by that portion of the understatement which is attributable to (1) "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment", sec. 6662(d)(2)(B)(i), or (2) any item if (a) "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return", sec. 6662(d)(2)(B)(ii)(I), and (b) "there is a reasonable basis for the tax treatment of such item by the taxpayer", sec. 6662(d)(2)(B)(ii)(II).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess such taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners, at trial, conceded that they should have reported on their 2003 return the respective distributions that Northwestern Mutual, Merrill Lynch, and Commerce Bank made to them during 2003. Petitioners do not dispute that they received Forms 1099 for each of the distributions at issue. Petitioners also concede that the understatement of tax on their 2003 return exceeds the greater of 10 percent of the tax required to be shown in that return or $5,000. See sec. 6662(d)(1)(A). Given petitioners' concessions in this case, we find that respondent has satisfied his burden of production with respect to section 7491(c) and the accuracy-related penalty.

In response, petitioners contend that they are not liable for the accuracy-related penalty with respect to the Northwestern Mutual distribution because they reasoned on a good-faith belief that the cash surrender value from the policy should be excluded from their gross income. In determining whether a taxpayer has acted in good faith, generally the most important factor "is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Sec. 1.6664-4(b)(1), Income Tax Regs.

We are not convinced, based on the record before us, that petitioners took any steps prior to the filing of their 2003 return to assess the income tax treatment of the Northwestern Mutual distribution. Moreover, we note that it was only after they received their notice of deficiency that petitioners thought

in earnest about how they could recharacterize that distribution so as to avoid its inclusion in their gross income.  We note, with emphasis, that none of petitioners' arguments to this end are based in the Code or the regulations promulgated thereunder. Accordingly, we find that petitioners did not act in good faith with respect to any portion of the underpayment for their 2003 taxable year.  See sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs.

<u>Decision will be entered</u>

<u>for respondent</u>.